**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| MAX PIZARRO ORTIZ | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 10-03538 (CCC) |
| v. | : | |
| | : | **OPINION** |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

---

**CECCHI, District Judge.**

Max Pizarro Ortiz ("Plaintiff" or "Ortiz") appeals the final determination of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff disability benefits under the Social Security Act ("Act"). The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court affirms in part the findings of the Administrative Law Judge (ALJ), but remands for the ALJ to set forth her reasons for disregarding the vocational expert's conclusion that someone who could only concentrate for six out of eight hours per day could not adjust to any job. Furthermore, this Court remands this matter for the ALJ to consider whether the Plaintiff meets the criteria in listing 5.05 for chronic liver disease and whether Plaintiff's combined impairments are medically equivalent to any listing. Therefore, the case is remanded for further analysis on these issues.

1

I.      **PROCEDURAL HISTORY**

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) with the Social Security Administration (SSA) on August 13, 2007, alleging disability beginning on April 1, 2005.  (R. 15.)  After his claims were denied initially and upon reconsideration, the Plaintiff filed a written request for a hearing.   (R. 15.)  On September 3, 2009, Plaintiff appeared at a hearing with counsel and testified before an ALJ. (R. 15.)  The ALJ concluded that the Plaintiff is not disabled because he is "capable of making a successful adjustment to other work that exists in significant number in the national economy." (R. 24-25.)

II.     **FACTUAL BACKGROUND**

A.      **Personal and Employment History**

At the time of the hearing, Plaintiff was forty-three years old.  (R. 19.)   He is separated from his wife and has six children between the ages of three and twenty-two, all of whom live with their mother.  (R. 33-34.)  He was born in Puerto Rico, where he attended school and worked until he came to the United States in approximately 2001.  (R. 34.)  His last job in Puerto Rico was as a sales merchandiser for Kimberly Clark.  (R. 37.)  After coming to the United States, Ortiz was employed as a baker for Panera from 2004 to 2005.  (R. 38.)  Ortiz left Panera in 2005, when he found out he had hepatitis C and he has not worked since.  (R. 38.)  He is currently supported by public assistance.  (R. 51.)

B.      **Daily Activities**

Ortiz testified that he spends his days watching television and going to medical appointments.  (R. 52)  At the time of the hearing, Ortiz had a girlfriend, Jacqueline Traval, who also lives in Newark with her twelve-year-old child, about five minutes away from Ortiz.   (R. 53.)  Ortiz and Ms. Traval have known each other since 2002.  (R. 63.)  Ms. Traval testified that

2

Ortiz spends several nights a week at her house.  (R. 63-64.)  She regularly assists him with cooking, grocery shopping, and laundry.  (R. 52, 64-65.)

## C.    Medical History

Ortiz was diagnosed with hepatitis C in 2005.  (R. 677.)  He suffers from several complications due to the disease, including cirrhosis and cellulitis in his leg.  (R. 615, 797, 810.) He underwent five months of treatment for hepatitis C starting in December 2006 and again from February 2008 to June 2009.  (R. 521, 677, 741.)  Ortiz has also suffered from depression since 2006, for which he has seen a psychiatrist and psychotherapist. (R. 453-530, 525-565.)  He has been prescribed medications including Prilosec, Singulair, Clonidine, Valtrex, Lexapro, Zoloft, and Remeron.  (R. 225, 233, 241, 525.)  He also takes Ambien for insomnia and Seroquel for depression.  (R. 225, 464.)

Medical records show that in February 2006, Plaintiff's HCV RNA was 1,800,000 and he had higher-than-normal levels of alanine aminotransferase (ALT) and aspartate aminotransferase (AST).  (R. 386.)  In May 2006, blood tests showed higher-than-normal levels of alpha feto protein.    (R. 328.)   In February 2007, a biopsy of his liver exhibited "chronic hepatitis, moderately active with portal fibrosis and marked portal-to-portal bridging as well as occasional portal- central bridging with occasional nodules (incomplete cirrhosis)."  (R. 319.) In March 2007, Ortiz underwent an esophagogastroduodenoscopy (EGD), which revealed esophageal varices and gastritis. (R. 339-340.)   Blood tests from August 2007 indicate higher-than-normal levels of ALT, AST, direct bilirubin, and total bilirubin. (R. 304.)   According to Lab reports from February 2008, Ortiz's HCV RNA was greater than 5,000,000 and his AST and ALT were 104.  (R. 736.)  However, in May 2009, a progress note indicated that his viral load was undetectable. (R. 752.)

3

Plaintiff took part in psychotherapy at the Outpatient Behavioral Health clinic at East Orange Hospital starting in September 2006. (R. 453-520.)  According to the initial assessment, Ortiz has a history of heroin and cocaine use.  (R. 500.)  Over the course of treatment, he reported trouble sleeping and feeling tired. (*See* R. 459, 465.)   On several occasions he also acknowledged auditory and visual hallucinations.  (*See* R. 461, 467.)  He was prescribed Zoloft, Remeron, and Seroquel.  (R. 480-88.)  Progress notes from January 8, 2008 and February 12, 2008 indicated that Ortiz appeared "less depressed" and on February 26, 2008 he was found to be "mildly depressed."  (R. 461, 463, 470.)  According to his treatment plan for January to April 2007, he was diagnosed with depression and had a global assessment of functioning (GAF) score of 45-50. (R. 531.)

On October 5, 2007 Dr. Solomon Miskin, M.D. conducted an exam of Ortiz.  (R. 248-50.)  He noted that Plaintiff was anxious, but he found "no overt evidence of a thought disorder." (R. 249.)  Plaintiff could recall what he had for breakfast that morning and for dinner the night before.  (*Id.*)  He was able to perform basic calculations and spelling, repeat digits forwards and backwards, and recall questions asked previously.  (*Id.*)  His speech was clear, he was alert, cooperative, and his comprehension was good.  (*Id.*)

Dr. Mariam Rubbani, M.D. also examined Plaintiff in October 2007. (R. 252-55.) According to Dr. Rubbani, the Plaintiff's left shoulder range was decreased and he had crepitus in the bilateral knees.  (R. 253.)  However, he was able to "sort papers and button buttons," as well as grip, pinch, squat, and walk at a reasonable pace without an assistive device.  (*Id.*)  Other than in his left shoulder, Plaintiff did not experience any muscle weakness.  (*Id.*)

In November 2007, S. Park, M.D., a state agency physician, concluded Ortiz had left shoulder adhesive capsulitis but could lift and/or carry twenty pounds occasionally and could lift

and/or carry ten pounds frequently.  (R. 270-71.)  Plaintiff had no limitation in his ability to stand, walk, sit, or push.  (R. 277.)  However, his ability to reach in all directions was limited.  (R. 277.)

In April 2008, Dr. Clara Castillo-Velez, a state agency physician, concluded that the plaintiff had depressive syndrome, characterized by decreased energy and feelings of guilt or worthlessness, as well as generalized persistent anxiety with motor tension.  (R. 436, 438.)  She also found that Mr. Ortiz had a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.  (R. 443.)  He had no episodes of decompensation.  (*Id.*)  Furthermore, he had moderate limitations in the following abilities: (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; (3) maintaining attention and concentration for extended periods; (4) performing activities within a schedule; (5) maintaining regular attendance; (6) being punctual within customary tolerances; (7) making simple work-related decisions; (8) responding appropriately to changes in the work setting; and (9) setting realistic goals or making plans independently of others.  (R. 447-48.)  He also had moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (R. 448.)  Dr. Castillo-Velez found Ortiz to be alert and oriented with no psychosis or hallucinations and fair concentration.  (R. 449.)  She remarked that the latest outpatient progress note from April 2008 indicated that Ortiz was doing better.  (*Id.*)

In August 2009, Dr. Yousuf Masood filed a medical report, stating Ortiz suffered from various medical illnesses including hepatitis C, hypertension, neutropenia and anemia.  (R. 615.)

He also reported that Ortiz has severe anxiety and depression and noted that Ortiz needed a cardiac evaluation for shortness of breath and edema. (*Id*.)

Dr. Jayant Bansil, Plaintiff's treating psychiatrist, also reported in August 2009 that Ortiz had symptoms of depression and psychosis and had been in treatment since September 2006. (R. 616.) Dr. Bansil diagnosed Ortiz with major depression and assigned him a GAF score of forty-five to fifty. (*Id.*) Dr. Bansil remarked that even though Plaintiff was in psychotherapy and being treated with medication, he continued to be symptomatic. (*Id.*) He isolates himself, requires assistance from others for daily living, has difficulties walking and is tired. (R. 616-17.) Dr. Bansil concluded that Ortiz's impairments were likely to last twelve months or more and to require treatment indefinitely. (R. 617.)

Plaintiff testified that he suffers from cellulitis, which causes him to get infections easily. (R. 32.) He also claimed to have pain in his left shoulder, problems with his vision, high blood pressure, and gastrointestinal problems. (R. 31, 40.) At the time of the hearing, he was using crutches because he had a boil that caused swelling of his left leg. (R. 46.) He stated that he could walk one or two blocks and could stand for about a half hour. (R. 49.) He testified that he is most comfortable in a seated position and that he could sit in one place for at least an hour and a half, but that after about two hours, he would start to feel pain. (R. 49.) Plaintiff stated that he could lift as much as ten pounds, but not twenty pounds. (R. 50.)

## III.   LEGAL STANDARD

### A.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). It is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" but must give deference to the administrative findings. *Williams v. Sullivan*, 970

F.2d 1178, 1182 (3d Cir. 1992); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *See Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 U.S. Dist. LEXIS 32110, at *7 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620, 131 (1966)).

This Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). However, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 Fed. Appx. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)). Where the Commissioner has rejected competent medical evidence, the ALJ must adequately explain his reasons and provide the rationale behind his decision. *See Brewster v. Heckler,* 786 F.2d 581, 585 (3d Cir. 1986). Given the totality of the evidence, including objective medical facts, diagnoses and medical opinions, and subjective evidence of pain, the reviewing court must determine whether the Commissioner's decision is adequately supported. *See Curtain v. Harris*, 508 F. Supp. 791, 793 (D.N.J. 1981). Generally, medical opinions consistent with other evidence are given more weight whereas opinions

inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record.  20 C.F.R. § 416.927.  Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence.  *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## B.     Determining Disability

Pursuant to the Social Security Act, to receive Supplemental Security Income Benefits, a plaintiff must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the plaintiff's physical or mental impairments must be "of such a severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.*  Impairments that affect the plaintiff's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered exertional limitations. 20 C.F.R. § 404.1569a; *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000).  All other impairments are considered nonexertional. *See Sykes*, 228 F.3d at 263.  Decisions regarding disability will be made individually and will be based on evidence adduced at a hearing.  *Sykes*, 228 F.3d at 262 (citing *Heckler v. Campbell*, 461 U.S.

458, 467 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C).

The Social Security Administration follows a five-step sequential evaluation to determine whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520, 416.920. The evaluation will continue through each step unless it can be determined, at any point, that the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).   The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263.  Neither party bears the burden at step three. *Id.* at 263, n.2.

At step one, the plaintiff's work activity is assessed, and the plaintiff must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit. 20 C.F.R. §§ 404.1572, 416.972. If the plaintiff is engaged in substantial gainful activity, he will be found not disabled and the analysis will stop, regardless of plaintiff's medical condition, age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If the individual is not engaging in substantial gainful activity, the analysis proceeds to the second step.    At step two, the plaintiff must show he has a medically determinable "severe" impairment or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).  It is not severe when medical evidence shows only a slight abnormality

9

or minimal effect on an individual's ability to work.  *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. 2010).

If the plaintiff does not have a medically determinable severe impairment, he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c). If the plaintiff has a severe impairment, the analysis proceeds to the third step.

At step three, the ALJ must determine, based on the medical evidence, whether the plaintiff's impairment matches or is equivalent to a listed impairment found in the Social Security Regulations' "Listings of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments are the same or equivalent to those listed, the plaintiff is per se disabled.  20 C.F.R. §§ 404.1520(d), 416.920(d); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000).  At this point, the ALJ must set forth the reasons for his findings.   *Burnett*, 220 F.3d at 119.  The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence.  *Id.*  Simple conclusory remarks will not be sufficient and will leave the ALJ's decision "beyond meaningful judicial review."  *Id.*

When the plaintiff does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four.  At step four, the ALJ must determine whether the plaintiff's residual functional capacity enables him to perform his past relevant work.    20 C.F.R.§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  This step involves three substeps: (1) the ALJ must make specific findings of fact as to the plaintiff's residual functional capacity (RFC); (2) the ALJ must make findings of the physical and mental demands of the plaintiff's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether the plaintiff has the capability to perform the past relevant work.  *Burnett*, 220 F.3d at

120.   The Social Security Administration often classifies residual functional capacity and past work by physical exertion requirements from "sedentary" to "very heavy work."   *See id.;* 20 C.F.R. §§ 404.1567, 404.967.  If the plaintiff can perform his past work, the ALJ will find that he is not disabled.   20 C.F.R. §§ 404.1520(f), 416.920(f).   If the plaintiff lacks the residual functional capacity to perform any work he has done in the past, the analysis proceeds to the fifth and last step.

At step five, the Commissioner must show that, based on the plaintiff's residual functional capacity and other vocational factors, there is a significant amount of other work in the national economy that the plaintiff can perform.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   During this final step, the burden lies with the government to show that the plaintiff is not disabled by demonstrating that there is other substantial, gainful work that the plaintiff could perform, given his age, education, work experience and residual functional capacity.  *See Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005); *Sykes*, 228 F.3d at 263. If the Commissioner cannot show there are other jobs for the plaintiff in the national economy, then the plaintiff is disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

## IV.   DISCUSSION

### A.   Summary of the ALJ's Findings

After reviewing all of the evidence in the record, the Administrative Law Judge (ALJ), Donna A. Krappa, determined that Plaintiff was not disabled and denied his claim.  (R. 15.) The ALJ arrived at her decision by following the required five-step sequential analysis required. *See* 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Plaintiff was not engaged in substantial gainful activity since April 1, 2005, the alleged onset date.  (R. 17.)  At step two, the ALJ concluded that

Plaintiff had the following severe impairments, based on a review of the medical evidence in the record: hepatitis C, cellulitis, and an affective disorder.  (*Id.*)  Accordingly, the ALJ proceeded to step three, where she evaluated the listings in sections 5.05, 8.04, and 12.04.  (R. 18.)  She found that the "medical evidence does not demonstrate esophageal varices, levels of serum bilirubin, ascites, hepatic encephalopathy, or hepatic cell necrossi or inflammation as required by listing 5.05," chronic liver disease.  (*Id.*)  She also concluded that the evidence does not show "extensive fungating or extensive ulcerating skin lesions that persist for at least three months despite continuing treatment" as required by required by listing 8.04.  (*Id.*)  Furthermore, she found that the Plaintiff's mental impairment does not cause him any "marked" functional limitations or "repeated" episodes of decompensation; therefore, it did not fully satisfy the requirements of listing 12.04 for affective disorders.  (*Id.*)  In conclusion, the ALJ determined that since alleged onset date of disability, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404. (*Id.*)

The ALJ then proceeded to step four, where she found that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).  (R. 19.)  In support of her RFC determination, she pointed to objective medical evidence in the record as well as testimonial evidence regarding symptoms, pain, and functional limitations.  (R. 19-23.)  Based on this evidence, the ALJ conceded that Plaintiff is "more limited than determined by the State agency consultant."  (R. 23.)  Based on a consideration of the entire case record, the ALJ clarified that while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and

limiting effects of these symptoms were not credible, to the extent the complaints were inconsistent with the RFC assessment.  (R. 23.)

The ALJ concluded that the evidence failed to support Plaintiff's assertions of total disability and she continued the analysis by formulating an RFC assessment. (R. 19.)  According to the ALJ, Plaintiff had the RFC to perform work that involved lifting and/or carrying ten pounds frequently and ten pounds occasionally; perform unlimited pushing and pulling within that weight restriction; perform frequent gross and fine manipulation with both hands; sit for a total of six hours; sit for one hour at a time with a three to five minute stretch breach and stand or walk for a total of two hours.  (R. 19.)  He is able to perform jobs that permit three breaks during the work day, each of which is at least fifteen minutes duration; that do not require overhead reaching with left arm (however, overhead reaching is able to be performed frequently with the right arm); that require no climbing of ladders, ropes, or scaffolds; that require only occasional climbing of stairs and ramps; that require only occasional balancing, stooping, kneeling, and no crouching and/or crawling; that are simple, unskilled and repetitive; that are low stress (requiring only an occasional change in the work setting during the work day, and only an occasional change in decision making required during the work day); that require no work in close proximity to others in order to avoid distraction and that require only occasional contact with supervisors, co-workers and the general public.  (R.19.)  Based on the step four analysis, the ALJ concluded that the Plaintiff's RFC was insufficient to perform past relevant work, since the exertional demands and skill level of that work exceeded Plaintiff's RFC for light work.  (R. 23.)

The ALJ then proceeded to step five to determine whether Plaintiff could perform other work in the national economy existing in significant numbers.  The ALJ considered Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational

Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, to make her determination.  (R. 23-24.)

She noted that on the alleged disability onset date, Plaintiff was thirty-eight years old, which is

defined under the regulations as a "younger individual."  (R. 23.)  He has at least a high school

education and is able to communicate in English.  (*Id.*)  She found that transferability of

Plaintiff's job skills was not material to the determination of disability because the plaintiff is

"not disabled," whether or not the plaintiff has transferable job skills.  (R. 23-24.)

Relying on the testimony of vocational expert, Rocco Meola, the ALJ found that given all

of the factors listed above, Plaintiff would be able to perform the requirements of representative

occupations such as assembler, document preparer, prep worker, carding machine operator, and

hand mounter.  (R. 24.)  The vocational expert further advised that these jobs are available in an

amount of approximately 1,200 in the regional economy and in an amount of approximately

35,000 in the national economy.  (*Id.*)  The ALJ conceded that additional limitations in the

plaintiff's ability to function were discussed with the vocational exert, but she did not find these

more stringent limitations to be applicable under the record.  (*Id.*)  Therefore, the ALJ concluded

that the Plaintiff is capable of making a successful adjustment to other work that exists in

significant numbers in the national economy, and therefore, a finding of "not disabled" was

appropriate.  (*Id.*)

**B.     Analysis**

**1.  *The case must be remanded for explanation as to why the ALJ disregarded the vocational
expert's conclusion that a person who could only concentrate for six out of eight hours could
not perform any job in the national economy.***

Plaintiff argues that the ALJ failed to address the vocational expert's conclusion that a

person with "moderate impairment of concentration . . . cannot adjust to any jobs."  (Pl. Br. 29.)

When an ALJ utilizes the expertise of a vocational expert (VE), the ALJ must pose a

hypothetical question that fully sets forth the plaintiff's impairments to the extent that they are support by evidence of record. *See Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994). However, the ALJ does not have to include every one of the plaintiff's impairments in her hypothetical, particularly where the VE reviewed the record and listened to the testimony before presenting his opinion. *See Ragsdale v. Shalala*, 53 F.3d 816, 821 (7th Cir. 1995). The hypotheticals posed must simply "accurately portray" the claimant's impairments and the expert must be given an opportunity to evaluate those impairments that are contained in the record. *Rutherford v. Barnhart*, 399 F.3d at 554. References to "all impairments" are understood to be those that are medically established. *Id.*

However, once a VE has answered a hypothetical, the ALJ must only consider it as relevant if it is supported by the ALJ's RFC analysis. *Johnson v. Comm'r of Soc. Sec.*, 398 Fed. Appx. 727, 736 (3d. Cir. 2010). If the hypothetical is "inconsistent with the evidence in the record, the ALJ has the authority to disregard the response." *Jones v. Barnhart*, 364 F.3d 501, 506 (3d. Cir. 2004).

In this case, the ALJ posed the following hypothetical to the vocational expert:

> Let's assume an individual of [the Plaintiff's] age, educational background, and work history. Assume this person can perform, say, sedentary work. They can lift ten pounds frequently, ten pounds occasionally; stand or walk two hours in an eight-hour workday; sit for six hours if given the chance to rise for three to five minutes each hour; unlimited pushing and pulling with the no weight restriction that I've given you; can perform frequent fine and gross manipulation with both hands; can perform work that requires at least three breaks during the work day, each of at least fifteen minutes duration; no ladders, ropes, or scaffolds; only occasional use of ramps or stairs; only occasional balancing, stooping, and kneeling; no crouching or crawling; no overhead lifting with the left arm; frequently can lift with the right arm; limited to jobs that are simple, unskilled, and repetitive that are low-stress. That is, they require only an occasional change in work setting during the workday, only occasional change in decision making required during the workday. Then let's add a limitation to only occasional contact with

15

supervisors, coworkers, or the general public.  Given that residual functional capacity, could the Plaintiff perform the job he did in sales?

(R. 71-72.)  The VE responded that a person with those limitations could not perform the work Plaintiff performed prior to the alleged onset of his disability.  (R. 72.)  However, the VE stated that the individual could perform other work that exists in the national economy such as "an assembler, a document preparer, a truck worker, carding machine operator, [or] hand mounter." (R. 72-73.)  The ALJ then offered a second hypothetical, in which she asked whether a person with those same limitations, who "can only concentrate for six of eight hours," would be able to perform the jobs listed by the VE.  (R. 73.)  In response, the VE stated that a person with this limited ability to concentrate would not be able to perform any work.  (*Id.*)

Plaintiff argues that the ALJ concluded that Ortiz has moderate difficulties in concentration.[1]  (Pl. Br. 29.)  Indeed, the ALJ stated that "[w]ith regard to concentration, persistence or pace . . . the claimant has moderate difficulties."  (R. 18.)  Furthermore, the treating psychiatrist found that Ortiz's "attention and concentration are limited."  (R. 453.)  In addition, the non-examining SSA consultant, Dr. Castillo-Velez, found that the Plaintiff had moderate difficulties in maintaining concentration, persistence or pace.  (R. 443.)  As such, Plaintiff contends that the ALJ should have concluded that Plaintiff could not adjust to any job. (R. 34.)

In discussing the VE's testimony, the ALJ quoted only the initial hypothetical that was offered to the VE, concluding that the hypothetical individual would be able to perform a "significant number" of jobs in the national economy.  (R. 24.)  The ALJ added that "possible additional limitations in the Plaintiff's ability to function were discussed with the vocational

---

[1] Plaintiff argues that "moderate" limitations in concentration would mean that he could not concentrate for half to three-quarters of the day. (Pl. Br. 29-33.)

expert.  However, the undersigned does not find these more stringent limitations to be applicable under the record."  (*Id.*)  The ALJ gave no further explanation as to why she did not take into consideration the further limitations she applied on the hypothetical at the hearing.  (*See Id.*)

The ALJ failed to indicate why she disregarded the VE's response to the hypothetical that included more stringent limitations.  Therefore, the Court remands the case for further analysis as to why the second hypothetical, containing more stringent limitations was disregarded.

### 2.  *The ALJ properly evaluated the treating physicians' opinions.*

In making her determination, an ALJ weighs medical opinions according to the guidelines in 20 C.F.R §§ 404.1527 and 416.927(d).  In evaluating the opinions of a treating physician, an ALJ considers several factors including "(1) the relationship between the doctor and the claimant, (2) the supportability of the doctor's opinion, (3) its consistency, (4) any specialization of the doctor, and (5) any other factors the court chooses."  *De La Cruz v. Astrue*, No. 10-4458, 2011 WL 3502360, at *8 (D.N.J. 2011) (citing 20 C.F.R. § 416.927(d)).  The ALJ will give a treating physician's opinion controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(d)(2).

A statement by a medical doctor that a claimant is "disabled" or "unable to work" is not determinative in the Commissioner's finding.  20 C.F.R. § 404.1527(e)(1).  These determinations are "reserved to the Commissioner . . . because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  *Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198, 203 n.2 (3d Cir. 2008).

Plaintiff argues that the opinions of Ortiz's treating physicians are "controlling" and that they establish Plaintiff's inability to perform any jobs.  (Pl. Br. 34.)  He contends that both the

17

treating liver specialist and the treating psychiatrist both found that the claimant was "unable to perform substantial gainful activity." (Pl. Br. 34; R. 522.) Plaintiff further argues that the treating physicians concluded that Ortiz has "serious" psychiatric and physical impairments that preclude work. (Pl. Br. 34.)

The Court finds that the treating physicians' conclusions that Ortiz is unable to work are not dispositive, as this determination is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1). Furthermore, in contrast to Plaintiff's contentions, the Court finds that the ALJ gave adequate treatment to all of the medical evidence on the record. In assessing Plaintiff's RFC, the ALJ considered the opinion of Plaintiff's treating physician, Dr. Bansil, who found that plaintiff was alert, oriented, and cooperative. (R. 454, 456, 461.) Dr. Bansil also noted on several occasions that Plaintiff was only "mildly depressed." (R. 454, 456, 461.) The ALJ further relied on evidence from the consultative psychiatrist, who noted that the Plaintiff was worried and anxious, but found that "[t]here was no overt evidence of a thought disorder." (R. 249.) The ALJ also considered the state agency physician's findings from April 2008. In that report, the physician concluded that Plaintiff had a "depressive syndrome, characterized by decreased energy and feelings of guilt." (R. 436.)

Furthermore, the consultative orthopedic examination from October 2007 indicates that Ortiz was "able to sort papers and button buttons." (R. 253.) He could also grip, pinch, squat, and walk on his heels and toes. (*Id.*) He also had no muscle weakness except in his shoulder. (*Id.*) He could walk at a reasonable pace without an assistive device. (*Id.*) It was also found in May 2009 that his hepatitis C viral load was undetectable. (R. 752.) The ALJ also noted that his treating physician report that he had multiple medical illnesses including hepatitis C and hypertension. (R. 21, 615.) Based on these and other findings, the ALJ concluded that "the

assessments provided by the claimant's treating physicians are well supported and not inconsistent with the other substantial evidence." (R. 23.) Therefore, the Court finds that the ALJ gave adequate weight to the treating physician's findings.

**3.  *The case must be remanded for further evaluation to determine Plaintiff's eligibility under the Listings and to determine if the combination of his impairments is medically equivalent to any of the listings.***

Plaintiff argues that the case should be remanded because the ALJ committed the following errors of law: (a) Misevaluation of the Plaintiff's eligibility under the listings; (b) Failure to consider the combined effects of Plaintiff's impairments; (c) Misevaluation of Plaintiff's GAF score; (d) Failure to properly evaluate Plaintiff's pain, symptoms, and credibility; (e) Failure to evaluate to the effects of Plaintiff's medications and treatment; and (f) Failure to evaluate the lay witness's credibility. (Pl. Br. 35-39.)

**a.      Eligibility Under the Listings**

Plaintiff argues that the ALJ erred in finding that his impairments did not meet the criteria in Listings 5.05 for chronic liver disease and 12.04 for affective disorders.[2] (Pl. Br. 35.) To qualify for a listed impairment, the claimant must satisfy all of the specified medical criteria. *Sullivan v Zebley*, 493 U.S. 521, 530 (1990). Even if the claimant has a severe impairment, it will not qualify if it only meets some of the required medical criteria. *Id.* Upon determining whether or not a claimant satisfies a listing, the ALJ must identify the relevant listings and explain his reasoning using the evidence and must set forth the reasons for his findings. *Burnett*, 220 F.3d at 119. Simple conclusory remarks will not be sufficient and will leave the ALJ's decision "beyond meaningful judicial review." *Id.* However, the ALJ is not required to use

---

[2] The ALJ also found that Ortiz did not satisfy listing 8.04 for chronic infections of the skin or mucous membranes, but Plaintiff does not contest this part of the ALJ's decision.

particular language but must sufficiently develop the record and explain the findings.  *Jones*, 364 F.3d at 505.

### i.    Listing 5.05 Chronic Liver Disease

To meet part A of the listing for chronic liver disease, a claimant must prove that he has the following:

> Hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy, demonstrated by endoscopy, x-ray, or other appropriate medically acceptable imaging, resulting in hemodynamic instability as defined in 5.00D5, and requiring hospitalization for transfusion of at least 2 units of blood.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.00.    The listing also states that "other abnormal lab tests, such as liver enzymes, serum total bilirubin, or ammonia levels may have poor correlation with the severity of liver disease and functional ability.  A liver biopsy may demonstrate the degree of liver cell necrosis, inflammation, fibrosis, and cirrhosis."  20 C.F.R. Part 404, Subpart P, appendix 1, Listing 5.00(D)(3)(c).

In this case, the ALJ concluded that "[t]he medical evidence does not demonstrate esophageal varices, levels of serum bilirubin, ascites, hepatic encephalopathy, or hepatic cell necrossi or inflammation as required by listing 5.05."  (R. 18.)  Plaintiff argues that the ALJ failed to recognize that he had esophageal varices and that his blood test results show increased levels of bilirubin.  (Pl. Br. 35-36.)

A review of the record indicates that Plaintiff did suffer from esophageal varices, which were noted on several occasions.  (R. 339-40, 619, 655.)  Furthermore, Dr. Masood, Plaintiff's treating physician, stated that Plaintiff "went into severe neutropenia/anemia, for which he received exfusion/infusion therapy." (R. 615.)  Blood tests also showed that Plaintiff had high levels of bilirubin.  (*See* R. 304.)   The ALJ's opinion references Plaintiff's elevated bilirubin as well as

Dr. Masood's findings, but it fails to fully acknowledge Plaintiff's esophageal varices. Furthermore, the opinion does not identify the evidence used in concluding that Plaintiff fails to satisfy the listing criteria nor did it set forth the reasons for this finding.  On remand, the ALJ shall fully develop the record and explain her findings at step three, including an analysis of whether and why Ortiz's hepatitis C does or does not meet the listing.

### ii.    Listing 12.04 Affective disorders

The Plaintiff also claims that Ortiz's condition meets the listing for affective disorders, 12.04.  (Pl. Br. 35.)  For a claimant's depressive syndrome to qualify under the listing, the claimant must meet the criteria in parts A and B or he must satisfy the requirements in Part C. Part A requires that the claimant exhibit at least four of the following:

> a. Anhedonia or pervasive loss of interest in almost all activities; or b. Appetite disturbance with change in weight; or c. Sleep disturbance; or d. Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.   Part B requires that the claimant's depressive syndrome result in at least two of the following:

> 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration;

*Id.*   In the alternative, the claimant may satisfy Part C of the listing, which requires a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:"

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.*

The ALJ's opinion does not provide an analysis for Part A of the listing. (R. 18.) Under Part B, however, the ALJ concluded that Ortiz did not meet the requirements because his "mental impairment does not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." (R. 18.) She also found that "the evidence fails to establish the presence of the 'paragraph C' criteria."

This Court's examination of the record finds that the ALJ's decision that Plaintiff's impairments do not satisfy the requirements of listing 12.04 is supported by substantial evidence. An initial assessment from September 2006 stated that the claimant had "no emotional complaint," but he was prescribed Zoloft. (R. 21.) Ortiz also did not believe that he needed care, treatment, or services at that time. (*Id.*) His sleep was poor and he had gained weight. (*Id.*) His concentration was good. (*Id.*) His history of heroin and cocaine was noted. (*Id.*) A progress note from the same month stated that Ortiz had "no significant depression event [sic]" and that "[h]e denied a history of depression." (*Id.*)

The psychiatric evaluation from October 2007 indicates that Ortiz was cooperative, coherent, and compliant. He had good apprehension and he was alert and oriented. Although he was anxious and worried, the psychiatrist found that "[t]here was no overt evidence of a thought disorder." (R. 249.) In July 2008, Dr. Peyton, a treating physician, also found that Plaintiff was

oriented to time, place, and person. (R. 679.) His memory was intact and he showed no depression, anxiety, or agitation. (*Id.*) Furthermore, between July 2008 and July 2009, Plaintiff reported no symptoms of depression and denied any symptoms of anxiety, memory loss, mental disturbance, suicidal ideation, hallucinations, or paranoia. (R. 618, 637, 647, 687, 693, 758, 764, 767, 770, 773, 776, 779, 781, 783, 786, 789, 791.) In April 2008, a state agency physician diagnosed Ortiz with depressive syndrome, characterized by decreased energy and feelings of guilt or worthlessness. (R. 447-450.) However, he was noted only to have mild restrictions of activities of daily living and maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. (*Id.*)

While Plaintiff's girlfriend testified that she cooks for him and helps with his groceries and laundry on a regular basis, Ortiz stated that he is able to grocery shop and cook for himself. (R. 52-54.) His testimony also demonstrates that he maintains a relationship with his girlfriend, whom he has known since 2002. (R. 54-55, 63-65.) His girlfriend stated that Ortiz is frequently depressed; however, she testified that his biggest problem is the side effects of his medication. (R. 66-67; 70.)

Plaintiff points to Dr. Bansil's finding that he "remains depressed, distressed, stills hears voices on and off, isolates himself and depends on others for assistance with activities of daily living." (R. 523, 616.) However, Dr. Bansil's statement is conflicted with other evidence on the record. Ortiz's psychotherapist noted on several occasions that Plaintiff was only "mildly" depressed. (R. 454, 456, 461.) He also found Plaintiff to be alert, oriented, and cooperative. (R. 454, 456, 461.) He noted that Ortiz was working on his coping skills and seemed less depressed. (R. 463.) While Plaintiff claimed to hear "murmurings," the therapist found that had no command hallucinations and showed no evidence of disturbed audio or visual perception. (R.

23

454, 456, 461, 464, 466.)    His attention and concentration were fair and he exhibited normal thought processes and content. (R. 466.)   On January 8, 2008, Ortiz seemed less depressed and his treatment appeared to be working.  (R. 470.)   He also reported feeling better on April 2, 2008.  (R. 455.)

Plaintiff also claims that Dr. Bansil's finding that Ortiz has a Global Assessment Functioning (GAF) score of 45-50 reflects a "'serious' impairment of social and occupational functioning."  (Pl. Br. 21.)  However, as the Court explains *infra*, a GAF score of forty-five does not require a finding of disability.

Plaintiff further contends that because the ALJ concluded that Ortiz is more limited than found by the state disability agency physicians, who found that he is "moderately" limited, she should have concluded that he has "marked" limitations.  (Pl. Br. 21.)  However, this statement does not lead to the conclusion that Plaintiff's limitations rise to the level of "marked." Moreover, the evidence in the record does not support such a finding.  Based on these findings, the Court concludes that the ALJ's conclusion that Plaintiff does not meet the criteria for listing 12.04 is supported by substantial evidence.

### iii.    Medical Equivalence

When a claimant's impairments do not satisfy all the specific criteria of the listings, the ALJ is also required to assess whether they are medically equivalent to a listing. § 404.1526(b). To be medically equivalent, an impairment or a combination of impairments must be at least equal in severity and duration to a listed impairment.  *Id.*   When a Plaintiff suffers from impairments affecting a number of body systems, this may require an analysis of the severity of their combination.  *See Torres v. Comm'r of Soc. Sec.*, 279 Fed. Appx. 149, 152 (3d Cir. 2008) (requiring the ALJ to analyze the severity of the combination of claimant's impairments, which

included "diabetes, Hepatitis C, back problems, headaches, chronic bronchitis, left eye blindness, glaucoma depression, anxiety, bipolar disorder, and personality disorder"). In setting forth a decision, "[t]he ALJ must adequately explain findings on equivalence." *McCarthy v. Comm'r of Soc. Sec.*, No. 95-4534, 1999 U.S. Dist. LEXIS 7551, at *37 (D.N.J. 1999).

Here, the ALJ concluded that the Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 18.) The ALJ's opinion provides no further examination as to whether Plaintiff's impairments medically equal any listing. A review of the record indicates that Ortiz suffers from ailments affecting multiple body systems including depression, insomnia, symptoms of anxiety, hepatitis C, cirrhosis, shoulder capsulitis, hypertension, and cellulitis, which may equate to the severity and duration of the listed impairment. (*See* R. 19-23.) Furthermore, there is relevant medical evidence on the record that may support a finding that Plaintiff's impairments are medically equivalent to a listing. However, because the ALJ provided little explanation, the Court cannot provide a meaningful judicial review of her findings regarding medical equivalence. Therefore, the Court remands the case for the ALJ to determine whether the combination Claimant's multiple impairments medically equaled any listing.

**b.     The ALJ Adequately Addressed the Combined Effects of Plaintiff's Impairments in Determining his Residual Functional Capacity and in Proposing a Hypothetical to the Vocational Expert.**

Plaintiff also argues that the ALJ failed to consider cumulative or combined effects of Plaintiff's impairments. (Pl. Br. 35-36.) He contends that the ALJ did not consider the combined impact of all of his limitations when determining his RFC and when devising the hypothetical posed to the VE. (Pl. Br. 36.) The Court finds that the even though she did not

explicitly reference each piece of evidence, the ALJ's opinion with respect to the RFC determination exhibits a consideration and a discussion of much of the medical and testimonial evidence on the record.  (*See* R. 19-23.)    The Court has, however, remanded this case to determine if the combined effects of Plaintiff's impairments are medically equivalent to a listing.

         **c.**    **The ALJ Properly Evaluated Plaintiff's Global Assessment Functioning Score.**

Plaintiff next argues that the ALJ misread Ortiz's Global Assessment Function (GAF) score and misevaluated the GAF Evidence.  (Pl. Br. 36.)  Indeed, in one instance, the ALJ stated that Plaintiff's GAF score was "fifty-five to fifty."  (R. 22.)  Instead, the accurate value was "forty-five to fifty," which was assigned by a psychiatrist at East Orange Hospital.  (R. 22; 541.) However, subsequently in her opinion, the ALJ stated the accurate GAF score of "forty-five to fifty."  (R. 23.)  Thus, the Court finds that the initial misstatement was simply a typographical error and had no effect on the ALJ's final decision, as she was aware of the accurate GAF score.

Furthermore, the ALJ did not misevaluate the GAF evidence.  A global assessment functioning between forty-one and fifty equates to "serious symptoms" *or* "serious difficulty in social, occupational, or school functioning."  *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).  However, a GAF score of forty-five to fifty does not signify that Plaintiff cannot work nor does it have a direct correlation to the severity requirements of the Social Security mental disorder listings.  *See* 66 Fed. Reg. 50764-5 (2000); *see also Gilroy v. Astrue*, 351 Fed. Appx. 714, 716 (3d Cir. 2009) (concluding that a GAF score of forty-five would not require a finding of disability).  Here, the ALJ considered the GAF Plaintiff's GAF score along with other relevant evidence regarding his level of functioning.

(*See* R. 19-23.)   Therefore, a finding that Ortiz has a forty-five to fifty GAF score is not determinative of whether he is disabled.

###    d.      The ALJ Properly Evaluated Plaintiff's Pain, Symptoms, and Credibility.

Plaintiff contends that the ALJ erred in concluding that his pain and symptoms were not credible.  (Pl. Br. 37.)  Specifically, Ortiz argues that the ALJ did not "apply the factors set out in the pain regulations for evaluating symptoms testimony."   (Pl. Br. 37.)    In evaluating a claimant's credibility, the ALJ must "consider ... all symptoms, including pain, and the extent to which [ ] [such] symptoms can reasonably be accepted as consistent with objective medical evidence." 20 C.F.R. § 404.1529(a). "While a claimant's subjective complaints must be given serious consideration, they must also be supported by medical evidence." *Johnson,* 398 Fed. Appx. at 735.  The ALJ may not discredit a claimant's subjective complaints based on his/her "own medical judgment; it must be discredited by contradictory medical evidence." *Cruz,* 244 Fed. Appx. at 481.    If there are inconsistencies in the evidence, the ALJ must mention and analyze the contradictory evidence that tends to discredit the claimant.  *Burnett,* 220 F.3d at 122.

However, "[t]he ALJ's assessment of credibility is an essential function of the Judge," and "[t]he ALJ's conclusions on [a p]laintiff's lack of credibility are within the ALJ's unique province." *Sullivan v. Astrue,* No. 09-2985, 2010 WL 2802231, at *8 (D.N.J. July 15, 2010); *see also Gainey v. Astrue,* 2011 U.S. Dist. LEXIS 44369, at *39–40, (D.N.J. Apr. 25, 2011) ("The ALJ has the authority to make credibility determinations of a plaintiff's testimony, specifically with regard to pain and other subjective complaints.")

Here, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 23.)  Contrary to Plaintiff's assertion, the

ALJ discredited Plaintiff's complaints by raising contradictory medical evidence. The ALJ cited to multiple findings in the record that suggest that Plaintiff's was not as limited in walking and lifting as he claims.   For instance, the ALJ referred to the consultative orthopedist's finding that Plaintiff was "able to sort papers and button buttons."  (R. 21.)  He also walked at a reasonable pace without an assistive device.  (R. 21.)  It was also found that he could lift twenty pounds occasionally and ten pounds frequently.  (R. 271.)   Furthermore, Ortiz himself testified that he could lift ten pounds.  (R. 50.)

Likewise, the ALJ's credibility finding regarding Ortiz's mental impairment was supported by relevant evidence in the record.  The ALJ explained that Plaintiff's depression caused only "mild restrictions of activities of daily living and mild difficulties in maintaining social functioning."  (R. 18.)  She also concluded that Plaintiff has moderate difficulties with "concentration, persistence or pace" and "experienced no episodes of decompensation, which have been of extended duration."  (*Id.*)

In reaching her conclusion, the ALJ provided a summary and analysis of the medical and testimonial evidence.  (R. 19-23.)   In particular, the ALJ noted Plaintiff's GAF scores and medical evidence demonstrating that Plaintiff has major depression.  (R. 21–23.)  Nevertheless, the ALJ also raised other evidence revealing that Plaintiff is alert and oriented.  (R. 22.)  While he suffers from depression, the ALJ noted that outpatient progress notes from April 2008 indicated that he was doing better.  (R. 22.)   Accordingly, the ALJ made a valid credibility determination based on substantial evidence as to the degree of Plaintiff's subjective complaints.

Additionally, Plaintiff claims the ALJ did not apply the special technique set forth in 20 C.F.R.  §§ 404.1520a and 416.920a to evaluate his mental impairment.  (Pl. Br. 37-38.)  According to those requirements, the ALJ's written decision "must show the significant history,

including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described." §§ 404.1520a(e)(2).

Here, the ALJ set forth the analysis upon which she based her findings using this technique. (R. 18, 19.) As already discussed, the ALJ provided a summary and analysis of the medical and testimonial evidence. (R. 19-23.) Based on this evidence, the ALJ found a mild restriction of daily living, mild difficulties in maintaining social functioning, and moderate difficulties with concentration, persistence, or pace as well no episodes of decompensation. (*Id.*) Accordingly, the ALJ fulfilled the requirements of the regulations at in 20 C.F.R. §§ 404.1520a and 416.920a.

    **e.**    **The ALJ Properly Evaluated Plaintiff's Limitations from Medications and Treatment.**

Additionally, Plaintiff contends that the ALJ failed to take his medication regimen and the resulting side effects into account when making her RFC finding. (Pl. Br. 38.) Plaintiff claims he has been prescribed over forty medications. (Pl. Br. 16.) However, a review of the record reveals that he never took all these medications at once. Furthermore, the ALJ noted the medications Plaintiff takes for depression, sleep, and hepatitis C. (R. 19, 20, 21.) She also specifically referenced Ms. Traval's testimony, stating that "the biggest problem [Plaintiff] has is the side effects of his medication." (R. 20.) Moreover, during the hearing, she discussed Plaintiff's side effects with him. (R. 57, 60.)

The record also supports a finding that Plaintiff does not have severe side effects from his medications. He testified that he is dizzy and indicated a "problem with [his] blood [and] bone marrow. (R. 57, 60.) However, between November 26, 2008 and May 13, 2009, Dr. Peyton

reviewed with Plaintiff all his medications and did not change or adjust any medications, indicating that he was not suffering from any severe side effects. (R. 751, 756, 757, 760, 763, 766, 769, 775.)    Additionally, Plaintiff stated that he wanted to remain on his current medication. (R. 464.)    Therefore, the Court finds that the ALJ adequately considered the Plaintiff's medication regimen and side effects. Furthermore, there is substantial evidence to support a finding that Plaintiff does not have severe side effects from his medications.

####    f.    The ALJ Properly Evaluated the Lay Opinion Testimony.

Lastly, Plaintiff argues that the ALJ failed to adequately evaluate the testimony of his girlfriend, Jacqueline Traval, who stated that Ortiz must elevate his legs and attend frequent medical appointments.[3] (Pl. Br. 39.) However, the ALJ's opinion provides a thorough summary and analysis of Ms. Traval's testimony. (R. 20.) Furthermore, the RFC finding reflects the ALJ's consideration of the limitations pointed out by Ms. Traval. The RFC states that Ortiz is able to "sit for one hour at a time with a three to five minute stretch break and stand or walk for a total of two hours [per day]." (R. 19.) These limitations would allow Ortiz to elevate his leg while he is seated. Moreover, as with Plaintiff's opinion testimony, the ALJ discredited any of Ms. Traval's testimony that was found to be inconsistent with objective medical evidence by setting forth the conflicting evidence. (R. 19.) Therefore, the Court finds that the ALJ properly evaluated the credibility of Ms. Traval's testimony.

## V.    CONCLUSION

The Court affirms the ALJ's decision in part and remands for the ALJ to indicate why she disregarded the VE's opinion that a person who only concentrate for six out of eight hours per

---

[3] Plaintiff identified several instances where the ALJ misrepresented Ms. Traval's testimony. (Pl. Br. 39-40 n. 34.) However, the Court finds that these were harmless errors that would not have affected the ALJ's ultimate decision.

30

day could not adjust to any job.  In addition, the matter is remanded for the ALJ to adequately support her conclusion that the Plaintiff did not meet the criteria in listing 5.05 for chronic liver disease and to address whether Plaintiff's combined impairments are medically equivalent to any listing.  The Court remands the matter for further analysis in accordance with this Opinion.  An appropriate Order accompanies this Opinion.


Dated: October 28, 2011                                           s/Claire C. Cecchi
                                                                 HON. CLAIRE C. CECCHI
                                                                 United States District Judge